**In the Matter of the GRAND JURY EMPANELED JANUARY 21, 1975.**

**Appeal of Joseph CURRAN et al.**

**No. 76–1175.**

United States Court of Appeals, Third Circuit.

Argued April 22, 1976.

Decided June 18, 1976.

Jonathan L. Goldstein, U.S. Atty., Maryanne T. Desmond, Asst. U.S. Atty., Newark, N.J., for appellee.

Evans, Koelzer, Marriott & Osborne, Rumson, N.J., for appellants; George J. Koelzer and Joel N. Kreizman, Rumson, N.J., of counsel.

Before ALDISERT, FORMAN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

We are asked to decide whether a district court may disqualify an attorney from representing more than one of nine witnesses before a grand jury where each of the witnesses has invoked Fifth Amendment protections. The district court concluded that the joint representation frustrated "the continuation and completion" of the grand jury investigation. Accordingly, the court ordered that each of the witnesses retain separate counsel. The witnesses appealed timely. Finding the district court's conclusion devoid of evidentiary support in the record, we reverse. We neither reach nor express an opinion on the broader issues tendered by the parties.

### I.

A federal grand jury sitting in Newark is investigating the National Maritime Union, its officers and its employees for possible violations of the Internal Revenue Laws and the Travel Act, as well as conspiracy to violate these laws. 26 U.S.C. § 7201 et seq.; 18 U.S.C. §§ 1952, 371. In connection therewith, the grand jury subpoenaed the union's books and records, and subpoenaed nine officers and employees to testify.

George J. Koelzer was retained initially to represent both the union and the individuals. He withdrew as counsel for the union after recognizing a conflict of interest. He continued to represent the nine individuals. In this capacity he advised the individuals that there were potentials for conflicts of interest and that, should such a conflict materialize, he had both ethical and legal responsibilities to disclose such a conflict and, thereafter, to withdraw in whole or in part from the proceedings. Also, Attorney Koelzer advised his clients that they would be responsible personally to pay the legal fees he would charge each on an hourly basis.

Upon the government's initiative, the district court conducted hearings to advise the individuals of potential conflicts of interest inter sese and to apprise them of the right to retain separate, independent counsel. Each stated in open court that he understood the possibilities for conflict and the right to independent counsel. None asked for permission to retain separate counsel. Thus, in the words of the court below, each

of the individuals "intelligently, knowingly, and voluntarily, waived [his] Sixth Amendment Constitutional right to independent counsel . . .." Appendix at 25a–26a.

Subsequently, the individuals invoked the protections of the Fifth Amendment before the grand jury. Thereafter the government moved for an order requiring separate legal representation.

Two additional pieces of information complete the factual mosaic with which we are confronted. Although the government could not ethically approach any of these witnesses to discuss the grant of immunity, it still could represent to Attorney Koelzer that it desired to grant immunity to one or more of his clients. Conceivably, it could do this without revealing the precise identities of the witnesses it desired to immunize. At that point a possible conflict of interest in the Koelzer multiple representation could arise. That point has not been reached. Second, the district court questioned each of the witnesses as to whether he understood the right to obtain independent counsel; the court questioned no witness as to his willingness to testify before the grand jury—with or without a grant of immunity.

On this record and after hearing oral argument, the district court orally granted the government's motion to require separate counsel. The essence of the court's reasoning is found in the following passage from the transcript:

> It seems to me that we balance two rights at this stage. We balance the right of these respondents to be represented by counsel of their choice against the impediment or frustration of the Grand Jury process that this joint representation engenders.
>
> I am convinced that the nine respondents very carefully have evaluated this joint representation by Mr. Koelzer. It is my judgment that the nine have banded together for this joint representation in

an effort to stand or fall together in this Grand Jury investigation.

> It is clear that none of the nine under the present circumstances are going to aid the Government in an investigation of the others.

App. at 95a–96a.

## II.

■ Preliminarily, the government questions whether the district court's order is appealable. The government recognizes, as it must, that orders disqualifying counsel from proceeding at trial often fall within the collateral order rule of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Kramer v. Scientific Control Corp.*, 534 F.2d 1085, (3d Cir., 1976). The government argues, however, that the factors justifying invocation of the collateral order rule do not obtain when counsel is disqualified while the "case" is still being considered by the grand jury. We rapidly reject this contention. The order of the district court is final and conclusive as to Attorney Koelzer's representation of more than one witness; it concerns important rights which would be irreparably lost if review were denied now. *See Rodgers v. United States Steel Corp.*, 508 F.2d 152, 159 (3d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *Samuel v. University of Pittsburgh*, 506 F.2d 355, 358–59 (3d Cir. 1974). Accordingly, we hold that we have jurisdiction to entertain this appeal.[1] In this respect, we agree completely with the Court of Appeals for the District of Columbia Circuit. *In re Investigation Before April 1975 Grand Jury*, 531 F.2d 600, at 605 n. 8, (D.C.Cir. 1976).

## III.

■ The government argues that *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973), controls. There, we stated that, "upon a showing of a possible con-

---

1. If anything, the argument for appellate jurisdiction in circumstances such as these is stronger than that in an arguable *Cohen* situation. Here, there is as yet no "case" in the

usual sense of the word to which the order may be deemed collateral—no "case" of which there will be eventual, albeit deferred, review.

flict of interest or prejudice, however remote, we will regard joint representation as constitutionally defective." *Ibid.* at 210. The government reads *Davenport* out of context. *Davenport* was a habeas case in which we were concerned with the defendant's important right at trial to effective assistance of counsel, encompassing a subsidiary right to representation by counsel free from conflicts of interest. *See United States ex rel. Horta v. DeYoung*, 523 F.2d 807 (3d Cir. 1975). Like other rights, however, the *Davenport* right may be waived. *Ibid.* at 810. Such a waiver is exactly what the district court elicited from each of the appellants at the hearings conducted in this case. See pages 1010–1011 *supra.* Thus, *Davenport* is inapplicable to this appeal.

Alternatively, the government relies on the theory embodied in *Pirillo v. Takiff,* Pa., 341 A.2d 896 (1975), *appeal dismissed & cert. denied,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94, 44 U.S.L.W. 3427 (1976). In that case, an attorney and his associate represented 12 policemen-witnesses before a grand jury. The attorneys' fees were to be paid by the Fraternal Order of Police, a group that had vowed publicly to oppose any form of cooperation by individual policemen with the grand jury. 341 A.2d at 899. The Pennsylvania Supreme Court upheld an order forbidding the policemen-witnesses to retain an F.O.P.-related attorney and requiring that no two witnesses be represented by the same counsel. *Ibid.* at 906. The court reasoned that the public interests in the effective investigation by the grand jury outweighed the private interests of the individual policemen in choosing their own counsel; accordingly, the balancing of interests justified the lower court's order.[2]

▪ The fee arrangement element in *Pirillo* suffices to distinguish that case from the one at bar. *See ibid.* at 903–04.[3] The record on this appeal, however, does not require us to rely on such a distinction. Rather, we may assume without deciding that the *Pirillo* rule is sound—that the government may obtain, in appropriate circumstances, judicial interference with private arrangements for multiple legal representation of witnesses called to testify before a grand jury, on the theory that the multiple representation impedes the effectiveness of the grand jury investigation.

In this case, the only evidence tending to support a conclusion that the multiple representation impeded the effectiveness of the grand jury was (1) the fact of Koelzer's representation of the nine witnesses, and (2) the fact that each of the nine witnesses invoked the protection of the Fifth Amendment when summoned to testify. As previously indicated, the district court concluded from this record that appellants had banded together in a "stone wall," an "iron curtain," to frustrate the investigation. App. at 97a. We have carefully reviewed the record of the proceedings below and find it devoid of evidentiary fiber and sinew to support the district court's conclusion and its draconian order interfering with the appellants' important rights to legal representation. As in *In re Investigation Before April 1975 Grand Jury, supra,* at 607, there is no testimony or other evidence in *this* record indicating "whether [appellants] would expect to continue to assert the privilege against self-incrimination even if, denied [Mr. Koelzer's] services, they elected to dispose with counsel entirely or to retain separate and exclusive counsel."

The government contended orally before us that Attorney Koelzer's multiple representation could seriously interfere with an offer of immunity to, or plea negotiations with, one of the appellants. As noted earlier, however, the government has not communicated to Attorney Koelzer that it desires to offer immunity to any of his clients. Moreover, Attorney Koelzer has represented throughout that he would withdraw as

---

2. The court specifically declined to base its result on the existence of multiple representation per se. 341 A.2d at 903.

3. Similar considerations distinguish *In re Gopman,* 531 F.2d 262 (5th Cir. 1976). *See ibid.* at 264, 266, 268.

soon as a conflict arose; at oral argument, he reaffirmed this pledge, and stated specifically that he would withdraw from representing any witness whom the government approached to discuss immunity or a plea. Thus, confronted with hypotheticals and not evidence, with rhetoric and not fact, the district court erred in stripping appellants of the counsel of their choice. Without more—and there is no more in this record—appellants' invocation of the Fifth Amendment before a grand jury investigating them, jointly and severally, could not serve to vitiate the important right to legal representation of one's choosing.[4] *See generally United States v. Mandujano,* —— U.S. ——, ——, 96 S.Ct. 1768, 48 L.Ed.2d 212, 44 U.S.L.W. 4629, 4639–40 (1976) (Brennan, J., concurring in judgment) (on possible abuses and dangers inherent in unfettered practice of calling putative defendants as witnesses before grand juries.)

Our holding is narrow: we hold that there was an insufficient evidentiary basis for the district court's order. We do not reach the other contentions tendered by the parties; specifically, we have assumed without deciding that we would accept the Pennsylvania *Pirillo* rule.

The judgment of the district court forbidding Attorney Koelzer's multiple representation of appellants will be reversed. The mandate of the court will issue forthwith.

---

**4.** In a modified context, the Supreme Court recently instructed on the importance of the right to choose one's counsel: "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975).