**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bill MAHAR, Defendant-Appellant.**

**No. 76–1316.**

United States Court of Appeals, Fifth Circuit.

April 14, 1977.

Rehearing and Rehearing En Banc Denied May 12, 1977.

Glenn Zell, Atlanta, Ga., for defendant-appellant.

Michael P. Carnes, U. S. Atty., Dallas, Tex., Ronald C. H. Eddins, R. H. Wallace, Asst. U. S. Attys., Fort Worth, Tex., for plaintiff-appellee.

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

Bill Mahar appeals his conviction for interstate transportation of stolen goods, 18 U.S.C. § 2314, and receiving and concealing stolen goods, 18 U.S.C. § 2315. Before trial, the district court disqualified Mahar's retained attorney because of a conflict of interest. At the hearing which preceded the disqualification, the district court showed considerable and commendable concern for Mahar's fundamental sixth amend-

ment right to be represented by fully independent counsel not possessing a conflict of interest. Mahar now contends, however, that the district court violated his distinct sixth amendment right to retain counsel of his own choosing, even when the chosen counsel suffers from a conflict of interest.

■ We find that at the disqualification hearing Mahar did not indicate a desire to waive his right to fully independent counsel. He did not assert his right to proceed with counsel possessing a conflict. We therefore affirm.

## I.

The two count indictment in this case came down September 5, 1974. Count one charged Mahar with interstate transportation of stolen goods. Count two charged Mahar, Fred Michael Bryson and two others with unlawful reception and concealment of stolen goods. A separate indictment charged Bryson, but not Mahar, with related offenses.

Mahar's first attorney requested and was granted permission to withdraw.[1] Mahar appeared at the October 4, 1974 arraignment without counsel. He pleaded not guilty, apparently with the assistance of counsel appointed by the court for the arraignment only. The court set trial for October 21 and advised Mahar, who was financially ineligible for court-appointed counsel, to obtain an attorney.

Mahar returned to court on October 21 without having obtained an attorney. Meto Miteff was then in court representing Mahar's codefendant, Fred Bryson. Mahar hired Miteff as his attorney. The record does not indicate whether Miteff apprised Mahar of the possible conflicts of interest or of the dangers the dual representation posed.[2] The court granted a continuance.

At the time he agreed to represent Mahar, Miteff was pursuing plea negotiations on behalf of Bryson. Four days later, Miteff concluded a plea bargain on Bryson's behalf. The Government agreed to move to dismiss the indictment against Bryson in the instant case in return for Bryson's guilty plea to one count of the related indictment. Of crucial significance here, the bargain also obligated Bryson to cooperate with the Government and to testify in its prosecution of Mahar. Bryson entered his guilty plea on October 25.

On January 27, 1975 the Government moved to disqualify Miteff as Mahar's counsel, citing Miteff's conflict of interest in simultaneously representing both Bryson and Mahar. At a hearing on the motion that same day, the Government told the court that it intended to call Bryson as a witness. The Government took the position that the patent conflict of interest required Miteff's disqualification.

Miteff argued that no conflict of interest existed. He said that he would not want to represent Mahar if there were a conflict. Mahar testified that he wanted to retain Miteff only so long as Miteff desired to continue.

On February 3, 1975 the court disqualified Miteff. On February 11 a new attorney entered an appearance on Mahar's behalf. In early March Mahar moved for a continuance because he had suffered a heart attack. Trial commenced November 3, 1975. At no time during the nine-month period from February 3 through the completion of the trial did Mahar raise any objection to the disqualification of Miteff or to the performance of his new attorney.

## II.

■ Mahar contends that his attorney should not have been disqualified.[3] The underlying constitutional standards are clear. A defendant has a right to be repre-

---

1. Neither Mahar nor the Government objected to the attorney's withdrawal.

2. In light of Miteff's later representation to the court that he believed no conflict existed, it appears unlikely that he discussed the matter with Mahar upon procuring the assignment.

3. The order disqualifying Miteff was an appealable order. *United States v. Garcia*, 517 F.2d 272, 275 (5th Cir. 1975). Mahar did not perfect an appeal at that time. We hold that he may

sented by fully independent counsel, free of any conflicts of interest posing a risk to the quality of representation. *See, e. g., Glasser v. United States*, 315 U.S. 60, 67–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Simultaneously, however, the sixth amendment entitles a defendant to waive that right and insist upon retaining an attorney with otherwise disqualifying conflicts. *See United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975); *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir. 1975); *cf. Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (defendant has right to self-representation).[4] The question here is whether Mahar attempted to exercise his sixth amendment prerogative to forego independent counsel. We conclude that he did not.

Our detailed review of the disqualification hearing transcript convinces us that Mahar did not assert a desire to retain Miteff despite a debilitating conflict. Rather, Mahar's position was that Miteff did not suffer from such a conflict. Miteff, speaking as Mahar's retained counsel, clearly indicated that he desired to continue in the case only if no conflict existed:

> . . . I couldn't see a conflict in my own mind. Certainly, I would not want to be placed in the position of having a conflict, if I thought there was a conflict.
>
> . . .

Now, if the Court feels there is a conflict there, then if the Court tells me that the Court feels that under the circumstances, I shouldn't represent this man and for him to get himself an attorney, that is fine, sir. I would be willing to do that. . . .

Mahar himself said that he wanted to retain Miteff only so long as Miteff desired to continue. Neither Mahar nor Miteff ever mentioned that appellant might be entitled to insist upon retaining an attorney possessing a conflict. Mahar's position was solely that Miteff did not suffer an otherwise disqualifying conflict.

The trial judge found a conflict, and we agree. From the outset of Miteff's representation of Mahar, the conflict was patent. While representing Mahar, Miteff advised his other client, Bryson, to agree to testify against Mahar as part of a plea bargain. Mahar was thus in the unacceptable position of having his own attorney help the Government procure witnesses against him.

The situation was little better after the plea bargain had been concluded. Bryson remained subject to an indictment that the Government had promised to move to dismiss, and the Government's satisfaction with Bryson's cooperation and testimony was an express condition of the bargain. As Bryson's counsel, Miteff was in the posi-

nevertheless raise the issue in this appeal from the judgment of conviction. The earlier order has merged into the later one. *See generally* P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1554–55 (2d ed. 1973) (collecting cases).

4. Our definitive holding in *Garcia* that a defendant has a sixth amendment right to insist upon counsel with an otherwise disqualifying conflict was not affected by the subsequent en banc decision in *United States v. Dinitz*, 538 F.2d 1214 (5th Cir. 1976). There we held that a district court's disqualification of a pro hac vice attorney for misconduct during the trial was reviewable only for abuse of discretion. We did not deal with the disqualification of an attorney whose only asserted transgression was proceeding in the face of a conflict of interest, and we therefore had no occasion to reexamine *Garcia*.

Nor is *Garcia's* thorough and forceful analysis undercut by *In re Gopman*, 531 F.2d 262 (5th Cir. 1976). That case involved a grand jury investigation of alleged record-keeping violations and embezzlement by a union official. Gopman was attempting simultaneously to represent the union itself and three union officials who were not targets of the grand jury investigation but whose interests as grand jury witnesses were adverse to those of the union. The district court ordered Gopman to cease representing the union officials before the grand jury, and we affirmed. In doing so we devoted less than a paragraph to the contention that the disqualification violated the clients' sixth amendment right to counsel of their own choice. We did not cite *Garcia*. Whatever *Gopman*'s exact scope, it does not apply to a criminal defendant. *Garcia* continues to state the law of this circuit that a criminal defendant has the right to insist upon retaining an attorney with otherwise disqualifying conflicts. The Government does not assert the contrary.

tion of advising Bryson with respect to the proper balance between testifying fully and invoking his fifth amendment right against self-incrimination. And even if Bryson determined to testify fully, he faced decisions with respect to cooperating with the Government: whether to make himself available to the prosecutors for extensive pretrial interviews, if so whether to answer questions narrowly or to volunteer information freely, and whether to cooperate with the defense in the preparation of Mahar's case.

With respect to each of these issues Miteff's conflicting loyalties would press in different directions. As Mahar's lawyer, Miteff should presumably have sought to interview Bryson and to prepare Bryson from Mahar's point of view. As Bryson's lawyer, on the other hand, Miteff's job was to prepare Bryson pursuant to the goal of effectuating the plea bargain or minimizing prejudicial consequences in the event the bargain fell through. We do not believe that Mahar's interests could be as well advanced by Miteff as by an attorney not suffering these divided loyalties.[5]

The conclusion that there was a conflict, coupled with Miteff's statement that he did not wish to continue if such a conflict existed, leads us to uphold the district court's decision to disqualify Miteff. If Mahar had expounded his right to continue Miteff as his counsel, the district court would have had no choice but to allow Mahar the right to choose his own counsel. Even the acutely attuned conscience of a judge cannot supervene the sixth amendment. In this case, however, when the conscience of the judge rang forth with the message that a defendant was nearing trial with inadequate representation, the defendant did not attempt to gainsay the judicial scruple.

■ Our disposition of the case makes clear that a defendant must affirmatively assert his or her right to forego fully independent counsel. In so holding we do not disturb the settled principle that waiver of the sixth amendment right to counsel must be made competently and intelligently. *See, e. g., Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Glasser v. United States*, 315 U.S. 60, 70–72, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Here, however, we deal with a unique situation. The right Mahar waived by failure to assert it was the right to waive fully independent counsel. We are thus dealing with the waiver of a waiver. Mahar has waived the right to waive part of his sixth amendment rights; he has waived the right to a trial less fair than would otherwise be afforded. This is the converse of the usual waiver situation because here the court was protecting the defendant's constitutional right to a fair trial.

■ We believe that a right to a procedural detriment can be waived more easily than a right meant to assure procedural fairness. A defendant who·wants to go to trial without fully independent counsel must affirmatively assert that desire. Mahar did not do so, and he therefore cannot now complain of the district court's decision to disqualify Miteff, thus affording Mahar his fundamental constitutional right to independent counsel.

■ We serve notice upon all courts in our jurisdiction, however, that the ambivalence in a situation such as this must not arise again. Our decision in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975) sets forth in some detail the procedure that a district court should follow before disqualifying defense counsel. The judge must elicit from the defendant a statement *in narrative form* indicating the defendant's comprehension of the situation and its implications and expressing the defendant's decision whether to proceed with the challenged counsel or with new counsel. If the

---

5. Miteff saw no problem with respect to preparing witnesses because he saw the lawyer's role as merely advising the prospective witness to tell the truth. We concur wholeheartedly in Miteff's practice of advising truthfulness, but we believe that consistently with that practice lawyers .often do and should take additional steps in preparing witnesses. And here, of course, Bryson could choose to tell the truth or, at least with respect to some matters, to tell nothing at all.

trial judge here had followed the *Garcia* procedure, the record would be unambiguous. By conscientiously following the *Garcia* procedure district courts will assure the proper resolution of the disqualification issue.

■ The disqualification hearing in the case at bar occurred prior to our *Garcia* decision, and we therefore cannot fault the trial judge here for failing to conduct the prescribed proceeding. Mahar's failure affirmatively to assert his right to retain counsel with an otherwise disqualifying conflict defeats his claim in this court. In the future district courts should not, however, rely on the defendant's failure to assert the right. When a defendant opposes disqualification of his or her attorney, the district court must take the necessary steps to impart to the defendant a full understanding of the consequences of the decision and to assure that the defendant's ultimate choice is honored.

The district court's decision is AFFIRMED.