In re GRAND JURY.

Misc. No. 979.

United States District Court,
N. D. Texas,
Dallas Division.

March 17, 1978.

Names of the attorneys have been masked to protect ongoing grand jury proceedings.

ROBERT W. PORTER, District Judge.

A Federal Grand Jury has been investigating certain allegations of fraud in the United States Department of Health, Education and Welfare Student Financial Aid Programs (HEW-SFAP). Parent and Subsidiary Corporations are targets of the investigation, and there are also pending two civil lawsuits involving the participation of the Parent and Subsidiary Corporations in

HEW-SFAP.[1] Two individuals, Assistant Treasurer of Subsidiary Corporation [formerly in the personnel department of Subsidiary Corporation (hereinafter "Assistant")] and an Auditor in the internal auditing department of Parent Corporation, (herein "Auditor") were summoned to appear and testify before the Grand Jury. Each is a potential target of the Grand Jury investigation.

Law firm has represented Parent and Subsidiary Corporation in connection with the investigation by the Federal Grand Jury of HEW-SFAP. Lawyers W and X of Law Firm have been actively involved in that representation. Lawyer Y of Law Firm represents Assistant and Auditor in connection with the investigation. Lawyer Y and Law Firm have also been involved in the defense of *Doe v. Parent Corp.* Plaintiff Doe has asserted a class action and has been attempting to discover Grand Jury documents for discovery in his civil case. The Government has been ordered to produce the requested documents. Lawyer Z is corporate counsel for Parent Subsidiary Corporation, but does not represent Assistant or Auditor.

In March, 1977, Assistant appeared for an interview with the U. S. Attorney. Lawyers Z and W were present. Assistant testified that at the time she understood these lawyers were representing Parent Corporation and not her individually.

Assistant received a subpoena to appear before the Grand Jury in January, 1978. Assistant was advised by Lawyer Z that Assistant could select Law Firm and Lawyer Y as her lawyer. Lawyer Y advised Assistant that she had the right to choose her own lawyer, and Assistant testified that she received no pressure to select Lawyer Y as her lawyer. She selected Lawyer Y, who had also assisted Assistant with some earlier civil litigation involving Subsidiary Company. Assistant testified before the Grand Jury on January 13, 1978. She never refused to answer questions, and never took the Fifth Amendment in answer to any questions. She never stepped out of the Grand Jury room at any time to consult with Lawyer Y. On February 7, 1978 Assistant again appeared before the Grand Jury. She did not take the Fifth Amendment, answered all questions and did not step out to consult with her lawyer.

Assistant also testified that she was not paying for Lawyer Y's services, and "presumed" they were paid by Parent Corporation. On direct examination Assistant testified that if Lawyer Y was disqualified from representing her she would be without an attorney. She testified on cross examination that she had not discussed with Lawyer Y how to secure other counsel if Lawyer Y was disqualified, or whether Parent Corporation would pay for that counsel.

After her February 7, 1978 appearance, the U. S. Attorney served Assistant with a motion to disqualify Lawyer Y. Lawyer Y then returned to Law Firm with Assistant, and discussed the motion with her in privacy. Lawyer Y explained to Assistant that Assistant had to decide whether to continue employing Lawyer Y as her counsel. She decided to retain Lawyer Y because: (1) Lawyer Y had advised Assistant on other legal matters; (2) Assistant believed Lawyer Y was competent and there was a good rapport and; (3) Lawyer Y had knowledge of the student loan program.

Auditor received a summons to appear before the Grand Jury in January, 1978. Lawyer Z advised Auditor that he could retain Lawyer Y as counsel for his grand jury appearance. In a conversation with Lawyer Z the day after Auditor received the subpoena to appear before the Grand

---

1. The names of the parties and attorneys have been concealed to preserve the secrecy of the ongoing Grand Jury proceedings. The two civil cases are styled *Parent Corporation v. HEW* and *Doe v. Parent Corporation.*

  The Federal Grand Juries have investigated the HEW-SFAP and the involvement of Parent and Subsidiary Corporations over a period of at least three years. No indictments have resulted from the investigation, and currently parent and subsidiary corporations are appealing the Honorable William Taylor's (United States District Judge for the Northern District of Texas) order finding that there has not been grand jury abuse in this investigation.

Jury, Lawyer Z advised Auditor that there was a potential conflict of interest if Parent Corporation's legal department represented him. Lawyer Z asked Auditor if he wanted outside counsel and Auditor requested outside counsel. Lawyer Z suggested Law Firm; no other lawyer or law firm was suggested.

At the initial meeting between Lawyer Y and Auditor, Lawyer Y advised Auditor that Lawyer Y perceived no actual conflict in the representation of Auditor and the companies but that a conflict might arise at a future date. Lawyer Y told Auditor that he had the right to counsel of his own choice and that he did not want to influence Auditor in his choice of counsel. Auditor then selected Lawyer Y as his counsel.

On February 7, 1978 Auditor appeared and testified before the Grand Jury. Auditor never took the Fifth Amendment, never refused to answer a question, and never stepped out to consult with Lawyer Y on any matters.

After his appearance Auditor was served by the U. S. Attorney with a motion to disqualify Lawyer Y from representing Auditor. Auditor and Lawyer Y then went to Law Firm and conferred privately. Lawyer Y and Auditor discussed the motion, and Auditor affirmatively chose Lawyer Y to continue representing Auditor because: (1) Auditor had previous contact with Lawyer Y, and (2) Auditor felt Lawyer Y had familiarity with the student loan program and the subsidiary company's involvement in the program.

In these pre-indictment appearances of individuals before the Grand Jury, the Court must decide: (1) Does Lawyer Y and Law Firm's representation of Auditor and Assistant individually and their representation of Subsidiary and Parent Corporations present an actual or potential conflict of interest; and (2) if a conflict exists, may that conflict be waived by the individuals involved?

■ The Sixth Amendment of the United States Constitution guarantees individuals the right to effective assistance of counsel, including a right to select the counsel of one's choice. The right to select counsel of one's choice is not absolute in grand jury proceedings and the Court may regulate the professional conduct of attorneys. *In re Gopman,* 531 F.2d 262 (5th Cir. 1976); *Matter of Grand Jury Empanelled January 21, 1975,* 536 F.2d 1009 (3rd Cir. 1976); *In re Investigation Before April, 1975 Grand Jury,* 174 U.S.App.D.C. 268, 531 F.2d 600 (1976); *In re Investigation Before the February 1977 Lynchburg Grand Jury,* 563 F.2d 652 (4th Cir. 1977).

■ In a matter before the Court, an attorney has a duty to immediately bring to the Court's attention any actual or potential ethical violation involving any of the parties, witnesses or attorneys in the case. *In re Gopman,* 531 F.2d 262 (5th Cir. 1976); *Supreme Beef Processors v. American Consumer Industries, Inc.,* 441 F.Supp. 1064 (N.D.Tex.1977).

### ACTUAL CONFLICT

■ A witness may not interfere with the course of a Grand Jury's inquiry or set limits on its investigation. *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1973). The Grand Jury must have the freedom to pursue its investigation within certain constitutional and legal guidelines unhindered by external influence or supervision. *United States v. Dionisio,* 410 U.S. 1, 16–18, 93 S.Ct. 764, 35 L.Ed.2d 67 (1972).

■ An actual conflict of interest may arise when a lawyer or law firm represents two or more witnesses summoned as witnesses by a Grand Jury. The court may disqualify the lawyer or law firm from multiple representation in appropriate circumstances when witnesses invoke the Fifth Amendment before the Grand Jury or refuse to answer Grand Jury questions. *In re Investigation Before the February 1977 Lynchburg Grand Jury,* 563 F.2d 652 (4th Cir. 1977) (The Court found actual conflict when witnesses invoked the Fifth Amendment and one of the attorneys was himself target of Grand Jury); but see: *Matter of Grand Jury Empanelled January 21, 1975,* 536 F.2d 1009 (3rd Cir. 1976) (invocation of

Fifth Amendment by Grand Jury witnesses represented by same counsel does not by itself justify disqualification); *accord, In re Investigation Before April, 1975 Grand Jury,* 174 U.S.App.D.C. 268, 531 F.2d 600 (1976). An actual conflict also arises when one witness is offered statutory use immunity and could give testimony detrimental to other witnesses represented by the same counsel, *In re Grand Jury Investigation,* 436 F.Supp. 818, 821 (W.D.Pa.1977), or has a fee arrangement that affects counsel's representation. *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975). The retention of a lawyer or law firm by a union to represent the union before a Grand Jury and the retention of that lawyer or law firm by individual union members before the Grand Jury standing alone does not create an actual conflict of interest even when the union pays the attorney's fees for all of the representation. *In re Investigation Before April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 531 F.2d 600 (1976).[2] When an attorney represents 12 police-witnesses before a Grand Jury and the attorney's fees are paid by a police association which publically vowed to oppose any form of cooperation by individual policemen with the Grand Jury, an actual conflict of interest exists. *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975).

I find that the payment by a "target" corporation of the attorney's fees of a law firm representing both the corporation and witnesses before a Grand Jury does not, by itself, constitute an actual conflict of interest sufficient to warrant disqualifica-tion of the law firm. I also find that there is insufficient evidence in this case to establish who paid the attorney's fees of Assistant and Auditor.[3]

There is no actual conflict of interest present in the record of this case. Both witnesses have answered all questions when they appeared before the Grand Jury. Neither witness took the Fifth Amendment in response to a question, and neither witness has been offered statutory use immunity in exchange for testimony. Assistant and Auditor, when questioned by the Grand Jury, did not step out to consult with their lawyer until the completion of their testimony, and there is no evidence of any other actual conflict in the record.

## POTENTIAL CONFLICT

A potential conflict of interest may arise when a lawyer or law firm represents two or more clients summoned as witnesses by a Grand Jury. The Court may disqualify the lawyer or law firm from multiple representation because counsel has placed itself in a situation where conflicting loyalties could potentially affect its professional judgment. *Matter of Grand Jury Proceedings,* 428 F.2d 273 (E.D.Mich.1976); *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975); *contra, In re Grand Jury Investigation,* 436 F.Supp. 818 (W.D.Pa.1977) (actual conflict needed.)[4]

Some circuits have indirectly concluded that a court may not disqualify an attorney from representing multiple defendants be-

---

**2.** The D. C. Circuit noted in its factual summary of the case that the union had paid for the attorney's representation of the witnesses. The D. C. Circuit did not find that the fee arrangement justified disqualification of the attorney and in fact did not comment at all on the fee arrangement. It rather held that all of the evidence in the record (which included the fee arrangement) was insufficient to justify disqualification. I conclude that the D. C. Circuit thus held by implication that the existence of this type of fee arrangement does not, standing alone, present an actual conflict of interest of sufficient gravity to warrant disqualification.

**3.** The only evidence in the record before the court on who paid the attorney's fees of Assistant and Auditor is the following exchange:

"Q. On that question, who is paying Lawyer Y's fee for representing you (Assistant) at this time?
A. Presumably (Parent Corporation)
Q. I mean you personally are not?
A. I am not."
Record at 56.

**4.** The duty to enforce professional responsibility gives the Court the responsibility "to nip any potential conflict of interest in the bud." *Tucker v. Shaw,* 378 F.2d 304, 307 (2nd Cir. 1967).

In *Pirillo* the Pennsylvania Supreme Court did not rely solely on the potential conflict of interest involved in multiple representation before a grand jury. The Court balanced the State's asserted impairment of the grand jury by the multiple representation and the particular fee arrangement against the witnesses'

fore a Grand Jury without establishing proof of an actual conflict of interest. The D. C. Circuit concluded that though an attorney represented a number of witnesses before the Grand Jury and some of those witnesses took the Fifth Amendment before the Grand Jury, this was not sufficient evidence to disqualify the attorney absent a hearing before the Court on whether the Fifth Amendment was properly invoked by the witness. *In re Investigation Before April 1975 Grand Jury*, 174 U.S.App.D.C. 268, 531 F.2d 600, 608 (1976).[5]

The Third and Fourth Circuits also refused to find that they had to disqualify attorneys involved in multiple representation before the Grand Jury absent a showing of actual impediment of the Grand Jury investigation. *Matter of Grand Jury Empanelled January 21, 1975*, 536 F.2d 1009, 1012 (3rd Cir. 1976); *In re Investigation Before the February 1977 Lynchburg Grand Jury*, 563 F.2d 652, 658 (4th Cir. 1977).[6]

The Fifth Circuit has not definitely determined whether the existence of a potential

---

rights under the Fifth and Sixth Amendment and the interests of the attorneys in pursuing their occupation. The fee arrangement involved apparently tipped the balance in favor of upholding the lower court's disqualification order. *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975). The Court did note, however, that:

A court is not bound to sit back and wait for a probability to ripen into a certainty; it may restrain conduct which has the potential for evolving into a breach of ethics before such conduct becomes ripe for disciplinary action.

Though the Court in *Matter of Grand Jury Proceedings* suggests that the potential conflict in multiple representation before the grand jury is sufficient to disqualify the attorneys involved, the Court also finds an "actual conflict" of interest. *Matter of Grand Jury Proceedings*, 428 F.Supp. 273 (E.D.Mich.1976). The "actual conflict" found by the Court is the fact that "(b)y their representation of the four prospective witnesses [and their earlier representation of other Grand Jury witnesses] they may learn that their testimony will be detrimental to the interests of the other witnesses they have represented." *Id.* at 277 (emphasis added). I find this alleged "actual conflict" to be a potential conflict of interest until the four witnesses testify. At that time the attorney and the court must decide the extent, if any, of an actual conflict of interest. The attorney may voluntarily disqualify himself (and there is no suggestion in this case that in the event of an actual conflict the attorneys involved would not have disqualified themselves) or the court, after a hearing, may decide that the attorneys should be disqualified.

5. The D. C. Circuit found that the District Court had erred when it assumed that multiple representation "must inevitably lead to a breach of secrecy of the grand jury proceedings." Id, 174 U.S.App.D.C. at 278, 531 F.2d at 607, fn. 11. A grand jury witness may disclose his testimony to his lawyer and anyone else or disclose his testimony to a particular person on the condition that the latter not disclose the testimony to anyone else.

The District Court felt that the attorney would be ethically compelled to inform his other witness clients of testimony detrimental to them. The D. C. Circuit noted that the attorney in *In re Investigation* had avoided that problem by keeping himself unacquainted with each witness's version of the events. Thus the Court held by implication that the potential conflict of having to disclose one witness's testimony detrimental to another witness was not by itself a sufficient reason to disqualify the attorney.

If an attorney did learn of a client's testimony before the grand jury detrimental to another client he represented an actual conflict of interest would occur. The attorney should contact the Court, and if he wished to continue his representation of both clients before the grand jury, the Court should hold a hearing on that matter. Presumably the D. C. Circuit would also follow this approach, but the facts in *In re Investigation* did not show that an actual conflict of this nature had occurred.

6. The only evidence before the Third Circuit of a conflict of interest in multiple representation before the grand jury was: (1) an attorney's representation of 9 witnesses, and (2) the assertion of the Fifth Amendment by those nine witnesses before the grand jury. The Court found no offer of immunity to any of the witnesses, and found that the attorney had offered *to withdraw from representation as soon as a* conflict arose. The Third Circuit concluded that this evidence, though presenting a potential conflict of interest was insufficient to support the district court's disqualification order. *Matter of Grand Jury Empanelled January 21, 1975*, 536 F.2d 1009 (3rd Cir. 1976)

The Fourth Circuit expressly held that:

"Our opinion should not be read to hold that a witness is not entitled to the assistance of counsel in grand jury proceedings. Neither should it be read to hold that mere multiple representation is of itself disqualifying."

*In re Investigation Before the February, 1977 Lynchburg Grand Jury*, 563 F.2d 652, 658 (4th Cir. 1977)

conflict of interest, for example only the existence of multiple representation before the Grand Jury, is sufficient to require the disqualification of the attorney with the potential conflict. *In re Gopman*, 531 F.2d 262 (5th Cir. 1976). In *Gopman* the Grand Jury requested three witnesses represented by the same lawyer to appear and produce certain union records in connection with the Grand Jury's investigation of a union's possible violations of the Labor Management Reporting and Disclosure Act (Landrum-Griffin Act), 29 U.S.C. § 401 et seq. These witnesses had not been identified as "targets" of the Grand Jury investigation, but sought advice from the lawyer who also represented the union. The attorney ordered these witnesses to take the Fifth Amendment before the Grand Jury and not to produce the requested records and the witness followed this advice.

The District Court disqualified the attorney because "it is clear to the Court that where an attorney finds himself in a position in which it might appear that the best interests of the unions are not being served that the attorney would voluntarily extricate himself from that predicament". *In re Gopman*, 531 F.2d 262, 267 fn. 6 (5th Cir. 1976). This language suggests the District Court found the potential conflict of interest in this situation required disqualification, but the District Court also stated that "(t)he conflict is manifest." "The unions have every right to expect that the circumstances underlying any suspected breaches of fiduciary duties owed to them by any officer would be fully explored and investigated without hinderance from any source." *Id.* This suggests that the District Court found an actual conflict of interest in the attorney's advice to the three witnesses to take the Fifth Amendment and the interest of the attorney's other client, the union, in having full disclosure of its record keeping procedures.

The Fifth Circuit affirmed the District Court's disqualification order because "the conflict arose when, on the one hand, the interests of appellant's union clients pointed towards disclosure, but, on the other hand, appellant was advising the individual witnesses as to whether disclosure should be made." *Id.* at 267. This suggests that the Fifth Circuit found an actual conflict present in this case.

The Fifth Circuit also stated in dicta that "(t)he conflict which then resulted (and which would have recurred if the union officials had been served later with similar subpoenas seeking other records) would have existed even if the witnesses' decision had been not to invoke the Fifth Amendment." *Id.* This suggests that the circuit found a potential conflict in multiple representation before a Grand Jury of a union and union officers that would in itself require the District Court to disqualify the attorney involved. "For example, counsel might tend to recommend disclosure when truly independent counsel would advise the witness to assert the Fifth Amendment. It is to avoid the possibility of either result that a court may properly exercise its power of disqualification." *Id* at 267, fn. 7. "On the record before this Court, it is clear that the possibility of a conflict had become great enough for the trial court to exercise its discretion." *Id.* at 266.

█ The facts in this case are similar to those in *Gopman*. One law firm represents a Parent and Subsidiary corporation which are targets of a Grand Jury.[7] That law firm also represents two witnesses before the Grand Jury who are not "targets" of the investigation but are employees of one of the "target" corporations. I find that the potential conflict of interest involved in this multiple representation could well prejudice the individual witnesses and, absent a valid waiver of these potential conflicts by the witnesses, the attorneys and law firms must be disqualified from representing the witnesses.

---

7. Lawyer Y in this case represents only the two witnesses and Lawyer W and X represent the corporations. Lawyers W, X and Y are all members of Law Firm, however, and therefore the same law firm represents the corporations

and the individual witnesses. I find no difference between this situation and having the same attorney representing the witnesses and the corporations before the grand jury.

## WAIVER: ACTUAL CONFLICT

■ A criminal defendant may waive the right to conflict-free assistance of counsel. *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975); *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2nd Cir. 1975); *cf. Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (defendant has right to self-representation). The waiver must be an "intentional relinquishment or abandonment of a known right", *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and be done with "awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Whenever an individual asserts his rights to waive conflict free assistance, the court must conduct a hearing to determine the individual's comprehension of the situation, its implications and whether the individual desires to proceed with the challenged counsel or with new counsel. *United States v. Mahar*, 550 F.2d 1005, 1009 (5th Cir. 1977).

■ This case involves a grand jury witness who has not been charged or arrested. The Sixth Amendment right to counsel, whether or not the witness is a target of the grand jury's investigation, is not absolute. *In re Investigation Before February 1977 Lynchburg Grand Jury*, 563 F.2d 652 (4th Cir. 1977); *In re Gopman*, 531 F.2d 262, 266 (5th Cir. 1976); *Matter of Grand Jury Empanelled January 21, 1975*, 536 F.2d 1009, 1012 (3rd Cir. 1976). The Fifth Amendment guarantees that no civilian can be brought to trial for certain crimes without "presentment or indictment of a Grand Jury". The Grand Jury "must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of witnesses called before it." (Citations and footnotes omitted) *United States v. Dionisio*, 410 U.S. 1, 16–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67, (1972). "Furthermore, a witness may not interfere with the course of the grand jury inquiry . . . nor is he entitled . . . 'to set limits to the investigation that the grand jury may conduct'." (Citations and footnotes omitted). *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, (1973).

Only a few courts have ruled on whether the presence of an actual conflict in multiple representation before a grand jury may be waived by the clients. The Fourth Circuit refused to pass on this question when it found that the attorneys involved in a conflict of interest had failed to fully advise their clients in detail of the conflict situation. *In re Investigation Before the February, 1977 Lynchburg Grand Jury*, 563 F.2d 652, 658 (4th Cir. 1977). The Third Circuit concluded that it was possible to waive possible conflicts or interest and concluded that "(s)uch a waiver is exactly what the district court elicited from each of the appellants at the hearings conducted in this case." *Matter of Grand Jury Empanelled January 21, 1975*, 536 F.2d 1009, 1012 (3rd Cir. 1976). The Third Circuit found no actual conflict in the multiple representation and therefore never reached the question of whether an actual conflict could be waived.

The Fifth Circuit has not addressed the problem of waiver of the right to conflict-free representation in grand jury proceedings. There is no discussion in the leading Fifth Circuit case of the waiver question. *In re Gopman*, 531 F.2d 262 (5th Cir. 1976).[8] In *United States v. Mahar*, 550 F.2d 1005, 1008, fn. 4 (5th Cir. 1977) the Fifth Circuit indicated that a criminal defendant may assert his right to insist upon retaining an attorney with otherwise disqualifying conflicts, and that Gopman did not clearly indicate whether a waiver could also occur in a pre-indictment grand jury situation.

---

8. The Fifth Circuit hints that an actual conflict could not be waived (an actual conflict was found in *Gopman*) but that a potential conflict would be waived.

"We do not indicate what merit, if any, appellant's arguments might have in a case where the ethical violation is relatively minor. We hold only that the public interest in a properly functioning judicial system must be allowed to prevail in the case presently before us." *In re Gopman*, 531 F.2d 262, 268 (5th Cir. 1976).

The one court that has analyzed the problem in the context of grand jury proceedings concluded that where an actual conflict existed, the right to conflict-free assistance could not be waived. *In re Grand Jury Investigation*, 436 Fed.Supp. 818 (W.D.Pa. 1977). The waiver would be illusory. "It would be a rare defendant [or witness before a grand jury] who could intelligently decide whether his interests will be properly served by counsel who also represents another defendant [witness]." *United States v. Carrigan*, 543 F.2d 1053 (2nd Cir. 1976). Judge Lacey in *United States v. Garafola*, 428 F.Supp. 620 (D.N.J.1977) has an excellent discussion of this problem, albeit in the context of a criminal defendant.

█ A waiver by a witness of an actual conflict in multiple representation before the grand jury does not eliminate the conflict and if the court finds an actual conflict, it is at the same time finding that in some way that conflict has impeded the grand jury investigation. Disqualification will remove any possibility that the grand jury investigation is impeded because of the existence of an actual conflict in representation, and this court finds that in this situation preserving the public and potential criminal defendant's Fifth Amendment right to a grand jury supercedes any rights of an individual to waive conflict free assistance of counsel under the Sixth Amendment. *In re Gopman*, 531 F.2d 262 (5th Cir. 1976). The court also holds that no waiver of an actual conflict could satisfy the standards of *Johnson* and *Brady*.

### WAIVER: POTENTIAL CONFLICT

The Fifth and Fourth Circuits have indicated in dicta that if the district court held a hearing where it was clear that the defendant understood his right to conflict-free assistance and then waived that right with regard to potential conflicts involved in multiple representation before the grand jury, those circuits would sustain a district court's finding of a valid waiver. *In re Gopman*, 531 F.2d 262, 268 (5th Cir. 1976); *In re Investigation Before the February 1977 Lynchburg Grand Jury*, 563 F.2d 652 (4th Cir. 1977).

The Third Circuit has held that a grand jury witness may waive potential conflicts of interest. *Matter of Grand Jury Empanelled January 21, 1975*, 536 F.2d 1009 (3rd Cir. 1976). I find that a witness before a grand jury may waive potential conflicts of interest involved in multiple representation before a grand jury.

The proper procedure for determining whether a grand jury witness has effectively waived potential conflicts of interest is set forth in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). *United States v. Mahar*, 550 F.2d 1005 (5th Cir. 1977).

█ The district court must follow a procedure akin to a Rule 11, F.R.Crim.Procedure inquiry and: (1) address each grand jury witness personally and advise him of the potential dangers of representation by counsel with a potential conflict of interest; (2) permit the grand jury witness to question the district court as to the nature and consequences of his legal representation; (3) elicit a narrative response from each defendant that he has been advised of his rights to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney, or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections; and (4) establish the waiver by "clear, unequivocal and unambiguous language". *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975).

Assistant indicated at a hearing conducted before the court that she had a conversation with Lawyer Y after she received a summons to appear before the grand jury. At that time Lawyer Y advised her of the potential conflicts of interest, but Assistant chose to retain Lawyer Y as her counsel. Conversation occurred after she was served with the motion for disqualification, and she decided to keep her chosen counsel.

█ At her first appearance before the grand jury Assistant was questioned about conversations with her lawyer con-

cerning conflicts of interest. She testified that she understood the meaning of the term "conflict of interest", and confirmed that understanding by responding to a hypothetical conflict situation posed by the U. S. Attorney.

The Court also questioned Assistant about her understanding of her right to counsel.[9] Assistant again testified that she understood the potential conflicts and wanted to waive her right to conflict-free representation. I find that Assistant established by clear, unequivocal and unambiguous language that she wanted to waive any potential conflicts, and that Lawyer Y and Law Firm are not disqualified from representing Assistant before the Grand Jury.

9. THE COURT: All right. [Assistant], let me ask you one or two questions if I may. Do you understand fully what a conflict of interest means?

THE WITNESS: Yes. I do.

THE COURT: And do you understand that—that has been explained to you by [Lawyer Y], I assume?

THE WITNESS: Yes.

THE COURT: And do you understand that one of the potential dangers is that if an attorney represents two or more persons who are witnesses before the Grand Jury that the potential exists that performing a duty to one client might violate a duty that he has to another client? Do you understand that?

THE WITNESS: Yes. I do.

THE COURT: And in the case of the corporation and an individual you have been advised— well, certainly before you testified before the Grand Jury—of your Fifth Amendment rights, were you not? That is your right to remain silent and that you are not required to testify or produce evidence that might incriminate you.

THE WITNESS: Yes.

THE COURT: And have you, likewise, been advised of that by [Lawyer Y]?

THE WITNESS: Yes.

THE COURT: In the case of a corporation and an individual, so far as documents are concerned, a corporation is a legal entity but it is not a natural person so a corporation, as such, has no Fifth Amendment right and an individual does. It is conceivable—and although a corporation can only act through individuals, obviously, it is conceivable that there might be a point in time where you should be advised or where the individual—let's put it in a hypothetical case—should be advised of his or her Fifth Amendment rights which might be harmful to the corporation. Do you understand that?

THE WITNESS: Yes.

Auditor also indicated at a hearing before the Court that he had been advised at his initial meeting with Lawyer Y of the potential conflicts in Lawyer Y's representation of Auditor before the Grand Jury but that he selected Lawyer Y despite these potential conflicts. After being served with the motion for disqualification Auditor had another conversation with Lawyer Y about the potential conflicts and again decided to keep Lawyer Y as his counsel.

The Court questioned Auditor and he testified that he understood his Fifth Amendment rights, that he understood the possible consequences of retaining counsel with potential conflicts, and that he waived his right to conflict-free counsel.[10]

THE COURT: At the same time a witness— in that circumstance an individual might testify when he should be advised of his Fifth Amendment rights but is not. Do you understand that?

THE WITNESS: Yes. I do.

THE COURT: And you are—of course, I have the matter ultimately to decide in this— you fully understand what has been going on and you are fully aware at least of a potential for conflict when one attorney represents two or more persons who appear before a Grand Jury?

THE WITNESS: Yes. I understand.

THE COURT: And appreciating that and the consequences of it, should I overrule the Government's motion, if a conflict later arose that related back to disclosures made by you or affecting you prior to the time the actual conflict surfaces, are you willing to waive the consequences of that?

THE WITNESS: Yes.

THE COURT: Understanding that if you did that, it might involve an adverse result to you?

THE WITNESS: I understand the procedure. Yes.

THE COURT: I have no further questions.

10. THE COURT: [Auditor], let me ask you a couple of questions. Do you understand what a conflict of interest, in the context we are in, means?

THE WITNESS: As I understand it, Your Honor, it would be that my best interests would be not necessarily served by having the same lawyer that my employing company does.

THE COURT: Right. That one of the potential dangers is that a lawyer representing two persons in the performance of his duty to one may violate his duty to the other.

THE WITNESS: That is my understanding.

THE COURT: The U. S. Attorney mentioned—asked you a question having to do with

I find that Auditor established by clear, unequivocal and unambiguous language that he wanted to waive any potential conflicts and that Lawyer Y and Law Firm are not disqualified from representing Auditor before the Grand Jury.

Accordingly, the Government's motion to disqualify is hereby DENIED.

It is so ORDERED.

indictment. Of course, it is a hypothetical question because that has not occurred, but in connection with your considering whether you want to continue retaining [Lawyer Y] in the [Law Firm], have you given any thought to what your position would be if in the future [Parent Corporation] were indicted?

THE WITNESS: I would assume there, sir, there would be a conflict of interest and I would be looking for a new counsel.

THE COURT: But you are fully aware of what is involved and you freely made your own choice to employ [Lawyer Y] without any promises, threats, or coercion or anything of that nature?

THE WITNESS: That is correct.

THE COURT: And if a conflict should arise which would relate back to some disclosure made by you in the past, if that has adverse effects on you, do you understand that and are you willing to waive that at this time?

THE WITNESS: Do you mean if my decision to retain this counsel has an adverse effect?

THE COURT: Yes.

THE WITNESS: I understand that and I think I would still retain the counsel.

THE COURT: So obviously from your testimony you understand the consequences and you are doing this voluntarily and with understanding of what is involved, is that correct?

THE WITNESS: Yes, sir.

THE COURT: I asked you those questions because if I made the ultimate decision to overrule the Government's motion, I want to make certain myself that you understand the factors and consequences and risks that are involved to you.

THE WITNESS: Yes, sir. I do.

THE COURT: Because while a corporation is a legal person, a legal entity, it is not a natural person and a natural person has a Fifth Amendment right. A corporation does not. So consequently in a hypothetical situation where a lawyer is representing both an individual and a corporation in the same matter, that could be a factor on whether a witness is advised of his Fifth Amendment rights and whether he ought to exercise his Fifth Amendment rights. Do you understand that?

THE WITNESS: Yes, sir.

THE COURT: And you were advised, were you not, before the Grand Jury of your Fifth Amendment rights, that is, of your right to remain silent and not give testimony that might be incriminating to you?

THE WITNESS: Yes, sir.

THE COURT: And you fully understand the consequences of that?

THE WITNESS: I don't quite understand the gist there. I understand that I have, as an individual, the Fifth Amendment rights at any time as long as I don't waive them and the thing that was read to me was part of a waiver which I refused to sign at the time.

THE COURT: But you do understand the Fifth Amendment?

THE WITNESS: Yes, sir.

THE COURT: Your rights under the Fifth Amendment, that is, to remain silent or refuse to answer on the grounds of Fifth Amendment privileges?

THE WITNESS: Yes. I do.

THE COURT: All right. I have no further questions.