**In the Matter of the GRAND JURY EMPANELED APRIL 24, 2008.**

**Misc. No. 08–104.**

United States District Court,
D. New Jersey.

Dec. 15, 2008.

## OPINION AND ORDER[1]

LINARES, District Judge.

Presently before the Court is an appeal by a law firm (the "Law Firm") of the Magistrate Judge's decision in this grand jury matter to appoint temporary conflict counsel for the purpose of advising the Court and the witnesses as to whether or not a conflict of interest exists in the Law Firm's representation of all four witnesses. Additionally, the Law Firm appeals the Magistrate Judge's decision denying a stay of her initial ruling. For the reasons set forth below, both appeals are denied.

### *I. Factual and Procedural History*[2]

#### *A. Background*

On or about September 10, 2008, a marine vessel ("Marine Vessel") docked at Port Newark. The four material witnesses (the "Material Witnesses") at the center of this appeal—A.A., B.B., C.C., and D.D.—were crew members aboard the Marine Vessel.[3] All four Material Witnesses have been represented by the Law Firm for the duration of this matter.

The instant grand jury is investigating the Marine Vessel for potential violations of United States anti-dumping and environmental laws—codified as the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901 *et seq.* As part of that investigation, the Government initially withheld departure clearance for the Marine Vessel. In exchange for eventual departure clearance, the Government signed an agreement ("Agreement") with the owner and operator of the Marine Vessel allowing it to leave the country but only on the condition that the owner and operator post

1. This Opinion and Order was originally published under seal on December 15, 2008. Now that the Grand Jury investigation in the matter has been completed, the Government has no objection to its unsealing. Thus, the Court releases the opinion but maintains the use of pseudonyms for the relevant parties. Finally, other than this footnote, the opinion remains unchanged from the original.

2. The facts are taken from the Law Firm's brief in support of its appeal, the accompanying declaration, and Judge Peter G. Sheridan's November 24, 2008 Order regarding an earlier motion in this case. The motion before Judge Sheridan was docketed as a civil action (Civ. No. 08-5249) and Judge Sheridan's Order can be found at Docket No. 7. Taking the facts from these documents, the Court provides a high-level overview of the general events giving rise to this appeal, and notes that the facts are undisputed unless otherwise indicated.

3. In order to protect the identity of the Material Witnesses, Marine Vessel, and Law Firm, and in order to respect the secrecy of the ongoing grand jury proceeding, the Court uses pseudonyms in place of the actual names of the parties involved. Fed. R. Cr. P. 6(e).

surety bonds to the Government in the amount of $500,000, and leave nine crew members here in the United States to be held for questioning. The owner and operator of the Marine Vessel are paying for the crew members' lodging expenses and have hired private counsel—the Law Firm—to represent them. It is possible, under the Agreement, that the crew members could stay in the United States through the end of February 2009. Finally, the owner and operator of the Marine Vessel have also agreed to continue paying the crew members' wages and expenses throughout the investigation. None of the crew members were a party to the Agreement and no witness gave consent to the proposed travel restrictions.

Having been held in the country for several weeks, on October 24, 2008, the Law Firm made a motion to the Honorable Peter G. Sheridan, United States District Judge, seeking to compel the Government to return the passports of crew members A.A., B.B., C.C., and D.D., so that they could leave the United States. (Civ. Act. No. 08–5249, Docket No. 1.) Subsequent to the filing of the motion but prior to any decision on it, the Magistrate Judge granted an application by the Government to designate each of those four crew members as material witnesses (hereinafter, "Material Witnesses") pursuant to 18 U.S.C. § 3144. The Magistrate Judge issued then issued Material Witness arrest warrants on November 3, 2008, and in light of the arrest warrants, on November 24, 2008, Judge Sheridan denied as moot the Law Firm's pending motion. (Civ. Act. No. 08–5249, Docket No. 7.)

### B. *Magistrate Judge's November 6, 2008 Order*

On November 6, 2008, the events giving rise to the instant appeal took place. Pursuant to the Material Witness arrest warrants, the Magistrate Judge scheduled a bail hearing for that day. At this hearing, she advised each of the Material Witnesses that having considered the facts set forth in the Government's material witness applications, she had concerns about multiple representation. Specifically, the Magistrate Judge had concerns that testimony by one or two of the Material Witnesses might implicate the interests of the others. (Hr'g Tr. 6, 9–11, Nov. 6, 2008.) Thus, the Magistrate Judge advised the parties that "in an abundance of caution", she would appoint each Material Witness temporary individual conflict counsel in order to give the witnesses a chance to consult with appointed counsel and in order to allow conflict counsel to advise the court regarding any potential or actual conflicts. (Hr'g Tr. 6, 11–12.) The Magistrate Judge did not disqualify the Law Firm from representing the Material Witnesses (Hr'g Tr. 11), nor did the Magistrate Judge render any decision on whether a potential conflict exists and if so, whether that conflict is waivable. The Magistrate Judge indicated that after conflict counsel had completed their work, the Court would hold a hearing to address and potential conflicts and/or the issue of disqualification. (Hr'g Tr. 12, 16.)

On November 19, 2008, the Law Firm filed the instant appeal.[4] The Law Firm

4. The Government argues, as an initial matter, that the Law Firm's appeal is untimely. Under Fed. R. Cr. P. 59(a), an appeal can be taken from a non-dispositive ruling by a Magistrate Judge within 10 days "after being served with a copy of the written order or after the oral order is made on the record." Furthermore, pursuant to Fed. R. Cr. P. 45, weekends and holidays are not counted when the time period in question is less than 10 days. The Magistrate Judge delivered her oral ruling on November 6, 2008. Excluding weekends and holidays, the deadline for appeal was November 21, 2008. The Law Firm filed its appeal on November 19, 2008, well within the allowable time frame.

also filed a motion with the Magistrate Judge asking to stay the Nov. 6, 2008 decision appointing temporary counsel. On November 26, 2008, the Magistrate Judge denied the Law Firm's motion to stay and the Law Firm subsequently appealed that decision as well to this Court.

## II. *Standard of Review*

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court pursuant to 28 U.S.C. § 636(b)(1)(A). The review of Magistrate Judge decisions in the criminal context parallels the review process in civil matters. Thus, the district court will only reverse a magistrate judge's decision on a non-dispositive matter if the decision is "contrary to law or clearly erroneous." Fed. R. Cr. P. 59(a); 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L. Civ. R. 72.1(c)(1)(A). Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently. *Bowen v. Parking Auth. of City of Camden,* 2002 WL 1754493, at *3 (D.N.J. July 30, 2002). A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law. *See, e.g., Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.,* 106 F.Supp.2d 761, 764 (D.N.J.2000). The burden of showing that a ruling is "contrary to law or clearly erroneous" rests with the party filing the appeal. *Kounelis v. Sherrer,* 529 F.Supp.2d 503, 518 (D.N.J.2008).

## III. *Discussion*

### A. *Law*

The present appeal concerns the interests implicated by the Law Firm's representation of multiple Material Witnesses before a grand jury. Any judicial inquiry in this area implicates the interests of at least four sets of players—witnesses, lawyers, courts, and the public—and the Court therefore begins the analysis by identifying the rights, interests, and law pertaining to each.

#### 1. *Witnesses*

The Sixth Amendment of the United States Constitution guarantees an individual the right to effective assistance of counsel and includes the right to select an attorney of one's choice. While Sixth Amendment protections do not technically attach in the grand jury setting, courts have not hesitated in finding a right to counsel for grand jury witnesses arising out of the First Amendment right to associate, *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the Sixth Amendment right to counsel, and "the right under the due process clause to be free of unjustified interference by the government in a private arrangement between client and a lawyer." *In re Schmidt,* 775 F.2d 822, 824 (7th Cir.1985).[5] The most recent district court in this circuit to address the issue noted that "courts addressing motions to disqualify attorneys from representing multiple grand jury witnesses

5. The Third Circuit actually appears to have grounded the right in the Sixth Amendment. *In the Matter of the Grand Jury Empaneled January 21, 1975,* 536 F.2d 1009, 1010–11 (3d Cir.1976). At the very least, the Third Circuit has acknowledged the "important legal right to legal representation of one's choosing" in the grand jury setting. *Id.* at 1013.

are uniform in expressly acknowledging, or in presupposing without discussion, the existence of this right." *In re Grand Jury Investigation,* 447 F.Supp.2d 453, 457 n. 3 (E.D.Pa.2006).[6]

The right to a particular counsel in both a trial setting, and by analogy a grand jury setting, is not absolute. In *Wheat v. United States,* the Supreme Court found that a defendant's choice of counsel is overcome "not only by a demonstration of an actual conflict but by a showing of a serious potential for conflict." *Wheat v. United States,* 486 U.S. 153, 163, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In the grand jury context, the same type of standard has been applied. *In re Grand Jury Investigation,* 447 F.Supp.2d at 456 (collecting cases before and after the *Wheat* decision that apply the "actual or serious potential for conflict" standard to representation of multiple witnesses at the grand jury stage). Thus, an individual's choice of counsel in a grand jury can be overcome in certain instances including most importantly a situation involving a conflict of interest.

Even so, a witness does have the qualified right to waive conflict-free representation. The waiver must be an "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Moreover, the waiver must be "made voluntarily, knowingly, intelligently, and 'with sufficient awareness of the relevant circumstances and the likely consequences.'" 447 F.Supp.2d at 463 (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). A court is not obligated to accept a witness's waiver of conflict-free representation, *see* Section III.A.4, *infra,* but rather must evaluate the voluntariness, knowledge, and factual circumstances surrounding the waiver. At the end of the day, therefore, witnesses before a grand jury have the right to counsel and the right to waive conflict-free counsel, but each right comes with its own limitations and can be overcome as a court evaluates other interests.

### 2. *Counsel*

Witnesses have a right—though not an absolute one—to waive a conflict of interest. Lawyers, on the other hand, have a duty to consider the relationship between one client and another and to evaluate the potential that a conflict of interest may arise. Rule 1.7 of the Model Rules of Professional Conduct counsels a lawyer from "represent[ing] a client if the representation involves a concurrent conflict of interest." Model Rules of Prof'l Conduct R. 1.7 (2002). More specifically,

> A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest in the lawyer.

*Id.* In the exercise of their professional duties, lawyers therefore "have an obligation to bring to the Court's attention any actual ethical or potential ethical violation involving any of the parties, witnesses, or attorneys in the case." *In re: Grand Jury,* 446 F.Supp. 1132, 1135 (N.D.Tex. 1978). (citing *In re Gopman,* 531 F.2d 262 (5th Cir.1976)).

Aside from the lawyer's obligation to assiduously review potential conflicts of interest, they also have the general right to practice their chosen profession. *Dent v. West Virginia,* 129 U.S. 114, 121, 9 S.Ct.

6. To the extent that the Government opposes the present motion on the ground that material witnesses enjoy no right to counsel (Govt. Br. 3), that objection is denied.

231, 32 L.Ed. 623 (1889). Thus, law firms and lawyers retain a right and interest in signing private contracts to represent clients of their choice without undue legal interference.

### 3. *Public*

The public has an interest in a truth-seeking grand jury investigation unhindered by the obstacles that arise from multiple representation. Thus, according to the Third Circuit,

> Although it may be true that these four witnesses may waive their Sixth Amendment right to effective assistance of counsel, they cannot at the same time waive the right of the public to an effective functioning grand jury investigation.... It would seem to this Court that the public has an overriding interest to see that the grand jury investigation in this matter be allowed to uncover the truth free of any potential obstructions arising from a conflict of interest in multiple representation.

*United States v. Dolan,* 570 F.2d 1177, 1182 (3d Cir.1978) (citing *Matter of Grand Jury Proceedings,* 428 F.Supp. 273, 278 (E.D.Mich.1976)); *see also Matter of Grand Jury Empaneled January 21, 1975,* 536 F.2d 1009, 1012 (3d Cir.1976) (assuming without deciding that the "government may obtain in appropriate circumstances, judicial interference with private arrangements for multiple legal representation of witnesses called to testify before a grand jury, on the theory that the multiple representation impedes the effectiveness of the grand jury investigation")(citing *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975)). Not all courts, however, have held the interest of the public above a witness's right to counsel. *In re Grand Jury Investigation,* 436 F.Supp. 818, 822 n. 14 (E.D.Pa.1977) ("... discomfort to the Grand Jury process, without more, is not sufficient to vitiate an individual's important right to counsel of his own choosing.") All in all, in the midst of a witness's right to effective counsel and counsel's obligation to recognize the possibility for conflict, courts have acknowledged the public's substantial interest in seeing a grand jury functioning properly.

### 4. *Courts*

■ Courts find themselves at the intersection of the above-listed interests, obligated to weigh each interest carefully such that a witness's right to counsel, a lawyer's right to represent his or her client, and the public's right to an unimpeded grand jury investigation are all preserved in the best manner possible. As an initial matter, therefore, courts retain the supervisory power to police the professional conduct of attorneys, including the power to disqualify an attorney from representing multiple witnesses at a grand jury proceeding. *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980); *In re Gopman,* 531 F.2d 262, 266 (5th Cir.1976); *In re Grand Jury Investigation,* 447 F.Supp.2d 453, 456 (E.D.Pa.2006).

■ In the context of multiple representation, the inquiry into disqualification involves a three-step process: (1) determine whether an actual conflict or potential conflict exists; (2) assess whether the witness can waive the conflict and if so, whether the witness has properly waived the conflict; and (3) apply the disqualification remedy to a conflict that cannot be waived or has not been properly waived. *In re Grand Jury Investigation,* 447 F.Supp.2d at 457. Under the first step, a court need not wait until a conflict develops; rather, it is "within the discretion of the district judge to nip any potential conflict of interest in the bud." *Tucker v. Shaw,* 378 F.2d 304, 307 (2d Cir.1967). Thus, a court is free to conduct its own *sua sponte* inquiry into a potential conflict situation.

Next, though a witness has the general right to waive conflict-free representation,

see Section III.A.1, *infra,* courts have the obligation to assess the waiver and reject it in certain circumstances. The "trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver." *United States v. Moscony,* 927 F.2d 742, 749 (3d Cir.1991); *see also Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309, 320–21 (1948) (recognizing the need for affirmative judicial involvement in the waiver process). Courts are therefore tasked with the affirmative duty to ensure that a client's waiver of conflict-free representation is knowing and voluntary.

Moreover, courts have the additional obligation of choosing to accept a knowing and voluntary waiver, i.e., a properly-executed waiver, in the face of an actual or potential conflict. *In re Grand Jury Investigation,* 436 F.Supp. 818, 821 (W.D.Pa.1977)(rejecting waiver of potential conflict of interest in multiple representation of grand jury witness because waiver was "purely illusory"). Thus, even if a witness makes a voluntary waiver, courts are entrusted with the function of evaluating the waiver against the other interests affected by the waiver—including the efficacy of the grand jury process and the nature of the potential or actual conflict.[7]

### *B. Analysis*

On November 6, 2008, the Magistrate Judge issued a very limited order. In her estimation, the affidavits in support of the Material Witness warrants suggested the possibility that the accounts of one or two Material Witnesses might adversely affect one of the others. Rather than immediately deciding whether or not a conflict existed, she appointed temporary conflict counsel tasked with the duty of advising each respective Material Witness of his or her rights and with ensuring that each Material Witness has an informed understanding of the risks associated with waiving conflict-free representation. Additionally, the Magistrate Judge appointed conflict counsel to report back to the Court regarding any findings of potential conflict. Both of these interests—(1) the Court's obligation to ensure that a witness's waiver of conflict-free representation is knowing and voluntary; and (2) the Court's duty to sufficiently investigate potential and actual conflicts of interest—were effectively served by the Magistrate Judge's decision.[8]

7. This appeal does not present the issue of whether or not a court should reject a waiver in the face of an actual or potential conflict. Rather, it addresses the preceding issue of what a court can and cannot do to help determine the nature of the conflict and the nature of the waiver. Because an evaluation of waiver versus conflict is an analysis that does not arise until a motion to disqualify, the Court does not presently discuss the standards for actual versus potential conflict and whether or not waivers are *per se* unreasonable in certain circumstances. *See, e.g., In re: Grand Jury,* 446 F.Supp. 1132 (N.D.Tex.1978) (discussing a circuit-by-circuit approach in the context of waiver and actual or potential conflict); *In re Grand Jury Investigation,* 447 F.Supp.2d 453, 462–63 (E.D.Pa.2006) (discussing Third Circuit law and refusing to adopt a *per se* rule prohibiting clients from waiving conflicts of interest in the grand jury context).

8. The Law Firm argues as well that the Magistrate Judge erred in relying upon Fed. R.Crim.P. 44(c) as the basis upon which to appoint temporary counsel. Rule 44(c) applies only to "defendants." By its language, it does not technically apply to witnesses at a grand jury proceeding. The Magistrate Judge, however, did not rely upon the rule itself but rather relied upon the concerns underlying Rule 44. (Hr'g Tr. 6, Nov. 6, 2008.) While Rule 44 does not apply on its face to a grand jury proceeding, the Court finds that the Magistrate Judge's decision is amply supported by concerns about waiver and by a court's duty to inquire into potential conflicts,

### 1. *Waiver*

Each Material Witness has executed waivers of conflict-free representation in this case. (Law Firm Br., Supp. Declarations.) For instance, A.A. writes that he is "satisfied with [his] present attorneys" and that "he understand[s] the potential for a conflict to arise and [he] waives that conflict." (*Id.* ¶ 4–5). All of the respective waivers use similar language. The Law Firm has also indicated that all of the Material Witnesses had waived the right to new counsel in proffer sessions with the Government. (Reply Br. 5.) The witnesses, however, speak little to no English and are completely unfamiliar with the United States and its system of law. (Law Firm Br., Decl. in Support, Exh. A–D.) Given these facts—waiver of conflict-free representation by witnesses who are unfamiliar with American law and their rights within it—it is unsurprising that the Magistrate Judge found it necessary to appoint temporary conflict counsel and no relevant caselaw forecloses such an appointment.

The Law Firm also indicates that each client has been fully informed of the risks associated with multiple representation. (Hr'g Tr. 7–8.) Certainly, pursuant to Model Rule of Professional Conduct 1.7, a lawyer is obligated to inform his clients of potential conflicts. Moreover, a client is allowed to executive waivers of potential conflicts. However, the court is obligated to ensure that any waiver is knowing, voluntary, and intelligent—with sufficient awareness of the consequences associated. *United States v. Dolan,* 570 F.2d 1177, 1181 (3d Cir.1978) (in evaluating waiver, trial judge must be satisfied that "the defendant is aware of the foreseeable prejudices his attorney's continued representation could entail for his trial, and possible detrimental consequences of those prejudices.") Appointment of temporary counsel is a vehicle through which the Magistrate Judge can ensure that the a witness's waiver complies with *Brady* and *Zerbst.* No caselaw suggests anything to the contrary.

Furthermore, while the Law Firm's explanation of relevant risks is important, many courts have found that current counsel's explanations of waiver and conflict to a client in a multiple representation situation may not be enough to ensure that a subsequent waiver is knowing and intelligent. "Because the conflicts are often subtle, it is not enough to rely upon counsel, who may not be totally disinterested, to make sure that each of his clients has made an effective waiver." *United States v. Lawriw,* 568 F.2d 98, 104 (8th Cir.1977); *see also United States v. Carrigan,* 543 F.2d 1053, 1058 (2d Cir.1976) (Lumbard, concurring) (noting that defense counsel may not be in the best position to judge whether a conflict of interest might develop); *United States v. Garafola,* 428 F.Supp. 620, 625 (D.N.J.1977). Thus, the Magistrate Judge decided, in an abundance of caution, that the witnesses in this matter would be better served with more than just an inquiry by the Court and with more than simply advice from present counsel. "[T]he Court has also asked attorney to appear so that you would each have the benefit of speaking to individuals who are representing you and you alone." (Hr'g Tr. 4.)

All in all, the law clearly obliges a judge to properly evaluate any waiver of conflict-free representation and the Magistrate Judge's decision to appoint temporary conflict counsel to aid in her inquiry is amply supported by the law and the factual circumstances of this case.

both of which animate Rule 44(c) and both of which find substantial support in the relevant caselaw. Moreover, even the Law Firm acknowledges that a court can and should inquire into whether or not a conflict exists. (Reply Br. 4.)

*2. Conflicts of Interest*

The Magistrate Judge also appointed temporary counsel to aid the Court in its ultimate conflict inquiry. The Law Firm does not disagree that the Court can and should inquire into the existence of a conflict. (Reply Br. 4) ("It is undisputed that the Court or the prosecutor may inquire into whether or not a conflict exists."). Rather, the Law Firm argues that conflict counsel is an improper vehicle through which the Magistrate Judge court exercised her duty to investigate potential conflict in the representation of multiple witnesses. Instead of appointing conflict counsel, the Law Firm argues that the "appropriate procedure is for the Court to hold an evidentiary hearing at which evidence regarding the purported conflict is presented." (Moving Br. 17.) No one disagrees that an evidentiary hearing is necessary before disqualification. And the Magistrate Judge acknowledged as much, stating that she "could convene a hearing to discuss an inquiry on conflict" after the Material Witnesses had finished conferring with conflict counsel. (Tr. 16.)[9] By appointing temporary counsel, the Magistrate Judge did not abdicate her duty to make a determination on conflict; rather, she used one of the many tools available at her disposal to ensure that all of the facts would be before her if and when an evidentiary hearing needed to be held. As the Magistrate Judge explained: "To the extent that this issue has been presented to me in the past, I usually ask an independent attorney to counsel the client, in any event, so that they had independent counsel on the subject beyond the Court's own inquiry." (Hr'g Tr. 12, Nov. 6, 2008.)

Equally important, the Magistrate Judge's decision did not purport to disqualify the Law Firm from representing the Material Witnesses, a fact that she made abundantly clear on the record. (Hr'g Tr. 11, Nov. 6, 2008) ("The Court is not finding that a disqualification is what's going on here. This is ... at a level much less intense.") Thus, the Law Firm's dual arguments that (1) the Material Witnesses' rights to counsel were violated (Law Firm Br. 19), and (2) the Material Witnesses' rights of due process were violated (Law Firm Br. 21), are equally unavailing. As an initial matter, a grand jury witness's right to counsel is not absolute. But more importantly, the Magistrate Judge in no way disqualified the Law Firm from representing the Material Witnesses. Appointing conflict counsel for the purpose of ensuring that the Material Witness is fully advised of the implications of waiving conflict-free representation is not at odds with a witness's right to counsel. Nor is there any indication that the witnesses' due process rights were violated by the appointment of temporary conflict counsel.

Finally, the Law Firm makes the premature argument that "no conflict of interest has been shown" and that "there is no conflict here which would warrant the appointment of new counsel." (Reply Br. 5; Law Firm Br. 13.) The Law Firm argues that in the absence of "a real and present conflict", the orders appointing conflict counsel were legally erroneous. (Reply Br. 5.) Setting aside the question of whether or not the Third Circuit requires a present conflict or the potential for a future conflict, the proper point at which to argue that issue is at the evidentiary hearing when a motion for disqualification is pending. Here, no such motion has been made.[10] More importantly, no decision

9. At another point in the hearing, the Magistrate Judge reiterated her intention to eventually conduct a hearing, stating: "I know the Government would the Court to conduct a thorough inquiry and the Court would do that at the appropriate time." (Tr. 12.)

10. The Law Firm makes one last argument that the Magistrate Judge committed error appointed CJA counsel to represent the witnesses without giving the witnesses an opportunity to select private counsel paid for by their employer. During the Nov. 6, 2008

that this Court can find stands for the proposition that a judge is prevented from inquiring into a potential conflict of interest in the absence of an actual conflict of interest. Rather, that sort of inquiry is one that courts are obligated to undertake.

*IV. Conclusion*

The Magistrate Judge's decision to appoint conflict counsel for the limited purpose of advising the Material Witnesses and the Court about any potential conflicts was not legally erroneous or contrary to law. Rather, the decision was grounded in an acute appreciation of the varying interests at stake—those of lawyers, witnesses, the public, and the Court—when an attorney or law firm represents multiple witnesses before a grand jury. Importantly, the Magistrate Judge's appointment of temporary conflict counsel jives neatly with a court's duty to evaluate the propriety of a waiver of conflict-free counsel and its corresponding obligation to investigate potential or actual conflicts of interest.

Thus, for the reasons set forth above:

**IT IS** on this 15th day of December, 2008,

**ORDERED** that the Law Firm's appeal of the Magistrate Judge's Nov. 6, 2008 decision appointing conflict counsel is **DENIED;** and it is further

**ORDERED** that the Law Firm's motion appealing the Magistrate Judge's decision not to stay her Nov. 6, 2008 ruling is **DENIED AS MOOT;** and it is further

**ORDERED** that this Opinion and Order is filed under seal and shall only be distributed to the parties and counsel associated with this matter absent further instruction from the Court.

**SO ORDERED.**

hearing, the Magistrate Judge inquired of the Law Firm as to whether the Material Witnesses had the personal means to secure counsel. (Hr'g Tr. 6.) Only after confirming that they did not have the financial means to hire private counsel did the Magistrate Judge appoint CJA counsel. (Hr'g Tr. 15–16.) Moreover, the Law Firm never made any argument to the contrary during the Nov. 6, 2008 hearing and thus no legal error accrued.